Filed 5/4/16  P. v. Garza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUBEN GARZA,<br><br>Defendant and Appellant. | F070203<br><br>(Super. Ct. No. CRM031358)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hanson, Judge.

Anne V. Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Louis M. Vasquez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J. and Detjen, J.

A jury convicted appellant Ruben Garza of driving under the influence and causing bodily injury (count 1/Veh. Code, § 23153, subd. (a))[1] and driving with a blood alcohol content of .08 percent or greater and causing injury (count 2/§ 23153, subd. (b)). In a separate proceeding, Garza pled no contest to driving with a suspended license (§ 14601.1, subd. (a)).

On August 28, 2014, the court placed Garza on felony probation for three years on the condition that he serve 260 days in custody with credit for time served.

On appeal, Garza contends the court abused its discretion and violated his federal constitutional rights to due process and to a fair trial when it denied his request for a continuance. We affirm.

## FACTS

*The Prosecution Case*

On December 28, 2013, at approximately 5:40 p.m., Melissa Ochoa was driving her Dodge Intrepid east on Bellevue Road when she came to a four-way stop at the intersection of Bellevue Road and Highway 59 in Merced County. After stopping, Ochoa continued driving east and was struck by a Ford Explorer driven by Garza that was traveling north on Highway 59 and ran a stop sign at the intersection. Garza's girlfriend, Diamond Angelo, was a passenger in the Explorer.

California Highway Patrol (CHP) Officer Michael Flores responded to the scene at approximately 6:00 p.m. and found the Ford Explorer blocking the roadway. The Explorer had damage to the front end. The Intrepid had its right side window broken, the front windshield was crushed into the vehicle, and the right side of the car had been pushed about a half-foot into the car.

---

[1] All further statutory references are to the Vehicle Code.

Officer Flores spoke with Garza after the collision. Garza told Officer Flores that prior to the collision, he was driving northbound on Highway 59. According to Garza, as he approached the intersection, his brakes became inoperable and he entered the intersection without stopping and struck the Intrepid. Garza estimated he was traveling 45 miles per hour before reaching the intersection. Garza also stated that he consumed two beers between 3:00 p.m. and 4:00 p.m.

As he spoke with Garza, Officer Flores noticed that his eyes were red and watery and he smelled of an odor of alcohol. Officer Flores had Garza perform several field sobriety tests. Garza's performance on the tests caused Officer Flores to believe that Garza was intoxicated. Officer Flores administered a Preliminary Alcohol Screening Test (PAST) at 6:42 p.m. that measured Garza's blood alcohol content (BAC) at .095 percent and a second test at 6:44 p.m. that measured Garza's BAC at .092 percent. A blood test performed at 7:02 p.m. measured Garza's BAC at .083 percent.

Based on Garza's statement that the Explorer's brakes were not working, Officer Flores checked them. As some fire department personnel pushed the Explorer out of the intersection, Officer Flores sat in the driver's seat, applied the brakes and the brakes stopped the Explorer. Officer Flores did not notice anything unusual about the way the brakes worked.

Ochoa suffered cuts on her nose and chin, a piece of glass was embedded in her neck, and she suffered extreme pain in her right ribs that lasted for several days. Angelo did not suffer any cuts but had redness and bruising around her right hip area and she complained of pain in her chest.

### The Defense

Angelo testified that she was the registered owner of the Explorer. Prior to the accident, she and Garza had been with Angelo's sister at a barbeque at Angelo's house. Angelo and Garza were drinking and she drank most of a 12 pack of beer that they bought earlier that day. At some point, Angelo decided to leave in her Explorer to pick

up her brother-in-law. However, Garza did not want her to drive and after he took the keys away, she let him drive. Before the collision, she saw Garza stomping on the brakes, but the car did not slow down. She also noticed that at some point Garza used the emergency brake and she heard a grinding sound coming from that brake. Just before the collision, Angelo saw the Intrepid driving across the intersection and then she saw glass flying everywhere. The impact of Angelo's seatbelt on her chest caused her to bruise internally and her chest to hurt enough that she was taken to the hospital in an ambulance. However, the pain was gone by the following day.

Angelo also testified that she acquired the Explorer from a car lot about a month before the accident. Two weeks prior to the collision, while driving the Explorer home from school, she applied the brakes but even though she kept pressing them, they completely failed and the Explorer would not stop. Angelo turned the car off and it stopped when it hit the sidewalk. Angelo was scared to drive the car after that incident, but continued driving it anyway. After Angelo told Garza about this incident, Garza tested the brakes but did not find anything wrong with them. Angelo called the car lot where she acquired the Explorer and informed them about the brakes, but she did not have time prior to the accident to have them check out the brakes.

### *The Request for a Continuance*

Ochoa took pictures of the accident scene while she was being checked by medical personnel and of her injuries when she was at the hospital. On December 30, 2013, she took pictures of her car at the impound yard.

On Friday, August 22, 2014, prior to the prosecutor beginning his opening statement, defense counsel told the court that late the prior evening, the prosecutor informed him there existed photographs Ochoa had taken of herself and her vehicle. The prosecutor responded that around noon the previous day, when he spoke to Ochoa about scheduling, Ochoa told him she had taken pictures of her injuries and of the damage to her car. Ochoa emailed the photographs to the prosecutor that night at 10:00 p.m., and

4

the prosecutor forwarded them to defense counsel the next morning as soon as he got to work.

Defense counsel then explained that bodily injury was an element of the charges Garza faced, that Officer Flores indicated in his report and preliminary hearing testimony that no photographs were taken, and that the defense strategy relied on the absence of photographic evidence to corroborate any claim of bodily injury by Ochoa. He also argued that the late discovery was detrimental to the defense and that the court should exclude the photographs or, alternatively, instruct the jury on the late discovery.

The court found that there was no issue of late discovery because the information was in Ochoa's exclusive possession. After further discussion, the court ordered that the photographs not be referred to or used until the following Tuesday.

After the lunch break, defense counsel again broached the subject of Ochoa's photographs with the court. Counsel explained that Officer Flores reported no photographs were taken of Ochoa's car and that Garza's defense had been prepared based on the absence of photographs to support the prosecution's version of facts and events that led up to the accident. Defense counsel also stated that he had discussed the matter with an attorney who was a former CHP officer who believed the photographs provided an opportunity to revise Garza's defense by providing a basis for the defense to go to an accident reconstructionist for "advice and, perhaps, expert testimony." Defense counsel then stated that if the court was going to allow the photographs to be admitted into evidence, he was moving for a continuance.

The prosecutor responded that there were no grounds for a continuance because there was a description of the damage to Ochoa's car and her injuries in the police report, and of her injuries in the medical records. He argued the photographs showed damage to both vehicles that was consistent with the damage described in the police report of the accident. The prosecutor also argued that Garza's version of events was inconsistent with the physical evidence because he claimed he was behind Ochoa when she attempted to

5

turn left, and that he wound up hitting her because his brakes were bad.[2] Defense counsel responded that the report described the damage to the vehicle in writing and that the pictures did a much better job of depicting where the damage to each vehicle was.

The court denied the continuance stating,

"… I'm going to deny the request for a continuance. And on the following grounds, I note that this matter was filed on January 2, 2014, approximately five days after the collision. Public defender was appointed on January 7. This matter had been pending.

"That entire time there is a—a variation between Ms. Ochoa's version of the events versus Mr. Garza's as set forth in the traffic collision report. There was—has been ample opportunity … to locate the vehicles, photograph them, should any party desire to pursue a reconstruction expert or develop … accident reconstruction evidence that would corroborate Mr. Garza's version.

"I've heard no reason why that wasn't done. And it's only when Ms. Ochoa produced a photograph that now the request is made without any indication that—or justification for the delay in pursuing this information on their own, or that it's likely to produce usable information."

Defense counsel responded that the defense devised a defense based on the paucity of evidence of the cause of the accident and its effects and that was the reason the cars were not examined. He further explained that the defense did not want to look at the cars because Officer Flores's failure to photograph them inured to the defense's benefit, that the defense was "running with [that]" and now it had all changed. After defense counsel acknowledged he made a tactical decision not to pursue that information and the

---

**2** The prosecutor was referring to Garza's statement to Officer Flores as memorialized in Officer Flores's report. According to the report, Garza told Officer Flores that as he was traveling northbound on Highway 59 and approaching Bellevue Road, "a vehicle [Ochoa's car] ahead of [Garza's car] was stopped for the stop sign at the intersection." Garza applied his brakes but his car did not stop. As Ochoa turned left onto Bellevue Road, Garza applied the emergency brake and began slowing but, nevertheless, collided with Ochoa's car.

prosecutor stated that all the damage was depicted in Officer Flores's police report, the court reiterated its ruling denying the request for a continuance.

## DISCUSSION

Garza contends that the defense "relied on the fragmentary evidence that existed to argue … that [Garza] did not cause the accident," and that the photographs of "the accident scene provided an opportunity to enhance [his] defense through the testimony of an accident reconstruction expert." He further contends that a continuance would not have inconvenienced the prosecution witnesses who were prepared to testify that day. Thus, according to Garza, because substantial justice was defeated by the denial of his motion for a continuance, the court abused its discretion when it denied his motion, and the denial violated his Sixth and Fourteenth Amendment rights to due process and a fair trial. We disagree.

"'A continuance in a criminal trial may only be granted for good cause. [Citation.] "The trial court's denial of a motion for continuance is reviewed for abuse of discretion." [Citation.] "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.*" [Citations.]' [Citation.] 'The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered.'" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1181, italics added.)

"To establish good cause for a continuance [to secure a witness's presence], defendant had the burden of showing that he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the

7

facts to which the witness would testify could not otherwise be proven." (*People v. Howard* (1992) 1 Cal.4th 1132, 1171.)

In seeking an open ended continuance, defense counsel did not show the court "that any expert existed who would be willing and able to offer material testimony within a reasonable time." (*People v. Howard, supra,* 1 Cal.4th at p. 1171.)  Nor did he tell the court what facts he expected the expert to testify to that could not otherwise be proven. Instead, defense counsel told the court only that "an attorney who was a former CHP officer" told him that he believed having the photographs would provide the defense with an opportunity to revise its defense by providing a basis for consulting an accident reconstruction expert.  Further, defense counsel was not diligent in seeking an expert. Despite being appointed to represent Garza seven days after the accident, and having more than seven months to prepare for trial, defense counsel had not taken pictures of either car or consulted an accident reconstruction expert.

Garza contends the denial of the continuance resulted in no accident reconstruction expert being contacted by the defense or testifying because it allowed the defense only two business days between the start of the trial and the start of the defense case in which to contact an expert.  As noted above, however, defense counsel had ample time prior to trial to take photographs of the vehicles involved and to consult an expert. Accordingly, we conclude that the court did not abuse its discretion or deny Garza his right to due process or to a fair trial when it denied his motion for a continuance because defense counsel failed to establish good cause for the motion to be granted.

Moreover, an abuse of discretion in denying a motion for a continuance does not require reversal in the absence of a showing of prejudice.  (*People v. Panah* (2005) 35 Cal.4th 395, 423.)  The failure to show that an expert could provide any evidence relevant to the defense, a fortiori, yields the conclusion that Garza did not suffer any prejudice from the denial of his motion for a continuance.  Nevertheless, we note that in order to prove Garza violated section 22153, subdivisions (a) and (b), the prosecutor had

to prove: (1) Garza drove a vehicle while under the influence of an alcoholic beverage or drug (§ 23153, subd. (a)) or with BAC of .08 percent or greater (§ 23153, subd. (b)); (2) when so driving, he committed some act which violated the law or that he failed to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured. (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1275.) A wide variety of acts or omissions will satisfy the requirement the defendant failed to perform a duty, including knowingly operating a car with defective brakes. (*People v. Capetillo* (1990) 220 Cal.App.3d 211, 216-217.)

It was undisputed Garza was driving when the collision with Ochoa's car occurred, that prior to the collision he had been drinking, and that the collision resulted in injuries to Ochoa and Angelo. It was also undisputed that immediately prior to the collision, he failed to stop as required by section 22450, and that Garza was aware that his vehicle's brakes could completely fail. Further, the evidence was overwhelming that Garza's BAC was .08 percent or greater and that he was under the influence of alcohol when the collision occurred.

Garza's defense was based on attacking the evidence that he had BAC of .08 percent or greater or that he was under the influence of alcohol when the collision occurred, and arguing that the failure of the Explorer's brakes caused the accident. However, Officer Flores testified that he tested the brakes after the collision and that they were working then. In any event, Angelo had informed Garza that two weeks prior to the collision, while driving home from school, the brakes on the Explorer completely failed, causing her to coast in the vehicle until it hit a sidewalk. Thus, in addition to the unlawful act of running a stop sign, the evidence established that Garza violated a duty imposed by law by knowingly driving a vehicle with defective brakes.

Garza contends that the prosecution case was weak because the CHP failed to perform the necessary accident reconstruction analysis to show that Ochoa's car stopped at the stop sign and then proceeded into the intersection, and that Garza's vehicle collided

with Ochoa's vehicle without appreciably slowing down.  However, there was no need for the CHP to perform this analysis because:  (1) Ochoa's testimony that she stopped at the stop sign prior to the collision was not contradicted by Angelo or any other evidence; and (2) as discussed above, even if Garza attempted to slow the car prior to the collision, he was still guilty of the offenses he was convicted of because he drove a vehicle with brakes that he knew could fail completely.  Therefore, since the evidence of Garza's guilt was overwhelming and Garza fails to explain how the testimony of a reconstruction expert would have assisted the defense, we conclude that the trial court's denial of Garza's motion for a continuance was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.